FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC 15  AM 10: 36

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEBORAH G. LEJEUNE | CIVIL ACTION |
| versus | No.  03-3335 |
| FEDERAL EXPRESS CORPORATION | SECTION: I/1 |

### ORDER AND REASONS

Before the Court is the motion of defendant, Federal Express Corporation ("FedEx" or "company"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]  Defendant contends that it is entitled to judgment as a matter of law.  For the following reasons, defendant's motion is **GRANTED**.

### *Background*

This action for monetary damages and equitable relief arises from claims of employment discrimination alleged by plaintiff, Deborah LeJeune.  LeJeune brings claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Louisiana Discrimination in Employment Act, La. R.S. 23:301-303, the

---

[1] Rec. Doc. No. 33.  FedEx has also filed three motions related to its motion for summary judgment: 1) a motion to strike declarations (Rec. Doc. No. 60); 2) a motion to strike uncertified transcripts (Rec. Doc. No. 61); and 3) a motion to deem defendant's undisputed facts admitted (Rec. Doc. No. 59).

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No_____

Louisiana Human Rights Act, La. R.S. 51:2231-2265, and the
Louisiana Whistleblower Law, La. R.S. 23:967.  Plaintiff contends
that she was subjected to discrimination because of her sex and
that after complaining about that discrimination, she was
ultimately fired from her position as a dispatcher in reprisal
for voicing her discrimination complaints.  With respect to her
sex discrimination claim, LeJeune asserts that she was subjected
to a hostile work environment, that she was denied training
opportunities given to similarly situated male employees, and
that she was treated differently than male employees.

The parties have submitted copious exhibits, including
numerous depositions, declarations,[2] and audio recordings
produced by plaintiff which purport to document hours of diurnal
FedEx workplace happenings.[3]  After thoroughly considering all of

---

[2] Defendant has moved to strike the declaration of Sharon Dokes and
paragraphs 5, 6, and 8-10 of the declaration of Sylvia Mitchell.  Rec. Doc. No.
60.    Defendant contends that these declarations contain unsubstantiated
statements, inadmissible statements, and blatant fabrications.   A motion to
strike is directed to pleadings only.  *See* Fed. R. Civ. P. 12(f) ("Upon motion
made by a party . . . , the court may order stricken from any pleading any
insufficient defense or any redundant, immaterial, impertinent, or scandalous
matter"); *see also  Resolution Trust Corp. v. Carr*, Civ.A.No. 90-2133, 1992 WL
245675, at *1 (E.D. La. Sept. 15, 1992) (finding motion to strike a letter
without  merit  because  a  letter  is  not  a  pleading);  *E.E.O.C.  v.  Admiral
Maintenance Serv.*, 174 F.R.D. 643, 645-46 (N.D. Ill. 1997) (generally a motion
to strike may not be used to strike a motion for summary judgment or supporting
affidavit).  These declarations are not pleadings as defined within Federal Civil
Rules of Procedure.  *See* Fed. R. Civ. P. 7(a).  Accordingly, the motion to strike
(Rec. Doc. No. 60) is **DENIED**.  The Court will consider the declarations to the
extent that they satisfy the requirements of Rule 56(e).

[3] See Rec. Doc. No. 55, plaintiff's opposition, exhibit E.  Plaintiff also
submitted "transcripts" of the audio recordings referenced in her opposition
(Rec. Doc. No. 58).   Defendant has moved to strike the uncertified transcripts
submitted by plaintiff (Rec. Doc. No. 61).
The Court ordered plaintiff to provide a transcript of the audio recordings
for the benefit of the Court.  *See* Rec. Doc. No. 48.  While the Court did not

the summary judgment evidence, the facts can best be detailed chronologically.[4]

Plaintiff worked for FedEx for nineteen (19) years.  She began her employment at the MSYA station in New Orleans as a part-time courier in February, 1984, and she was promoted to full-time courier approximately four months later.[5]  In October, 1995, plaintiff was promoted to part-time dispatcher,[6] and then

---

anticipate that plaintiff would transcribe the recordings herself, the Court recognizes that her transcripts are not summary judgment evidence; the audio recordings are.  Likewise, the transcripts provided by defendant which were prepared by a certified court reporter are not evidence (Rec. Doc. No. 61, exhibits B & C).

As discussed above, Rule 12(f) does not provide for striking material other than pleadings, and the transcripts at issue are not pleadings.  Accordingly, defendant's motion to strike plaintiff's uncertified transcripts (Rec. Doc. No. 61) is **DENIED.**

[4] The background facts are taken from plaintiff's complaint as well as defendant's statement of material undisputed facts ("SOMF") which are well-supported by plaintiff's deposition and the declarations of various individuals.  In her statement of material facts as to which there exists a genuine issue to be tried, plaintiff categorically denies a number of defendant's undisputed facts.  Specifically, plaintiff denies the following paragraphs of defendant's undisputed facts:  5, 7, 10-12, 14, 16-17, 19-20, 22, 24-27, 31-32, 37, 40-41, 43-44, 46, 48-49, 52-57, 59-60, 63, 65-67, and 69-71.  Plaintiff asserts that "[b]ecause Defendant decided to change the words from those used by Plaintiff at the deposition, Plaintiff must deny and contest these statements."  Rec. Doc. No. 65.  Plaintiff, however, has failed to explain why defendant's undisputed facts are inaccurate and defendant has moved to have its undisputed facts deemed admitted.  Rec. Doc. No. 59.

After a careful examination of defendant's statement of undisputed facts and the underlying exhibits, the Court concludes that each fact is well supported with evidence from plaintiff's own deposition as well as the depositions and declarations of others.  Accordingly, because plaintiff baldly refuted defendant's facts without providing a short and concise statement of the material facts as to which there exists a genuine issue to be tried, defendant's motion to deem its undisputed facts admitted (Rec. Doc. No. 59) should be and is **GRANTED.**  *See* Local Rule 56.2.

[5] Rec. Doc. No. 1; *see* Rec. Doc. No. 33, SOMF ¶ 1.

[6] Rec. Doc. No. 33, SOMF ¶ 3.

in January, 1997, she was promoted to full-time dispatcher.[7]

Plaintiff alleges that she was subjected to verbal abuse, predominantly by two of her male co-workers, Steve Alley ("Alley") and Charles Cruthirds ("Cruthirds"), and that she was occasionally subjected to such abuse by another co-worker, Eugene Shannon.[8]  Plaintiff claims that the mistreatment started during her first week as a full-time dispatcher.

When the dispatch office was moved to a new location within the New Orleans area, Sherrie Maykut, who had previously been the senior manager, assumed the position of operations manager at the new station.[9]  Johnny Griffitt became the senior manager and Randy King became the managing director.  The management team comprised of Maykut, Griffitt, and King was in place when plaintiff's employment was terminated in August, 2002.[10]

Sometime around September, 2001, plaintiff suffered from a hand, foot and mouth virus.[11]  On September 25, 2001, Maykut called plaintiff into her office to address complaints she had

---

[7] *Id.* at ¶ 4.  In 1999, plaintiff temporarily returned to a part-time dispatcher position due to some family related issue.  She resumed a full-time dispatcher position in September, 2000.  *See* Rec. Doc. No. 33, SOMF ¶¶ 5, 6.

[8] *See* Rec. Doc. No. 1, ¶ 11; Rec. Doc. No. 33, SOMF ¶ 43.  *See also* Rec. Doc. No. 55, ex. A, deposition of LeJeune, pp. 196-230; ex. B, declaration of Sylvia Mitchell, pp. 4-5.

[9] Rec. Doc. No. 33, SOMF ¶¶ 7-8.

[10] Rec. Doc. No. 33, SOMF ¶ 8.

[11] Rec. Doc. No. 33, SOMF ¶ 9.  Hand, foot and mouth virus is a contagious disease which can easily be transmitted.  *Id.* at ¶ 11, citing plaintiff's deposition, pp. 258-59.

received about plaintiff using the break room to care for her
feet.[12]  Plaintiff claims that during the meeting, Maykut
instructed her not to use the break room.[13]  LeJeune immediately
went to Griffitt to complain that she had been discriminated
against.[14]  Plaintiff claims that she was then sent home due to
her illness until her foot healed.[15]

Approximately three weeks later, on October 16, 2001,
plaintiff returned to work.[16]  On October 22, 2001, plaintiff
received her first formal warning letter and a one-day
suspension.[17]  Plaintiff alleges that the warning and suspension
were "in retaliation for complaining about discrimination."[18]

The subject of the warning letter was an incident that

––––––––––––––––––––

[12] Rec. Doc. No. 33, SOMF ¶ 12.

[13] Rec. Doc. No. 33, SOMF ¶ 12.

[14] Rec. Doc. No. 33, SOMF ¶ 13.  In her complaint, plaintiff alleges that
she "complained of gender discrimination, including, but not limited to, verbal
harassment by LeJeune's male coworkers, to Senior Manager Johnny Griffin [sic]
and to Dispatch Manager Sherrie Maykut."  Rec. Doc. No. 1.  In her deposition,
plaintiff recalled complaining about discrimination based on her hand, foot and
mouth virus.  Rec. Doc. No. 55, exhibit A, pp. 241-42.

[15] Rec. Doc. No. 33, SOMF ¶ 15.

[16] Plaintiff's first hand, foot and mouth disease-related medical leave
began on September 11, 2001; after missing approximately a week of work due to
the virus, plaintiff returned to work on September 17, 2001.  Plaintiff's
deposition, corroborated by the company's leave of absence forms, reflects that
plaintiff returned to work, but that she was then absent again from September 26,
2001, through October 16, 2001, presumably following the September 25, 2001,
meeting with Maykut and Griffitt.  See Rec. Doc. No. 33, SOMF ¶¶ 9-15.

[17] Rec. Doc. No. 33, SOMF ¶¶ 18-19.  The warning letter was issued on
October 22, 2001, while the incident occurred on October 19, 2001.  See Rec. Doc.
No. 55, ex. 2, warning letter.

[18] Rec. Doc. No. 1, ¶ 14.

occurred on October 19, 2001, in which plaintiff allegedly came into work on a previously scheduled vacation day.  Maykut sent plaintiff home in view of the fact that someone else had been scheduled to work plaintiff's shift and, following a heated exchange with Alley and Cruthirds, plaintiff then allegedly drove out of the company parking lot in a reckless manner.[19]

Approximately five days after returning to work,[20] on November 19, 2001, plaintiff received her second warning letter which she alleges to be retaliatory.[21]  The second warning letter involved an incident which occurred on November 16, 2001: LeJeune was cited for her treatment, described by witnesses as abusive, shocking and unprofessional, of a courier over the radio.[22]

Following receipt of her second warning letter, on November 21, 2001, plaintiff filed a guaranteed fair treatment procedure ("GFTP"), FedEx's established internal appeal procedure for

---

[19] Rec. Doc. No. 33, SOMF ¶ 24.  On October 22, 2001, based on the written statement of Eugene Shannon, who detailed the events to management, Maykut issued a disciplinary warning as a result of plaintiff's "unprofessional and disruptive conduct in the New Orleans Dispatch Office" and because she "recklessly and at a high rate of speed left the employee parking lot."  Rec. Doc. No. 33, SOMF ¶ 25.  See also Rec. Doc. No. 55, ex. 5, Shannon's witness statement; ex. 2, warning letter.

[20] After receiving her first warning letter and one-day suspension, plaintiff took additional time off from work due to stress.  Rec. Doc. No. 33, SOMF ¶ 26.

[21] The second warning letter was based on an event that occurred on November 16, 2001, it was issued on November 17, 2001, and it was received by plaintiff on November 19, 2001.  See Rec. Doc. No. 55, ex. 29, p. 11.

[22] Id.  On November 20, 2001, plaintiff took another medical leave of absence and apparently returned to work on December 24, 2001.

-6-

disciplinary actions.[23]   In her GFTP, plaintiff complained that Cruthirds's and Alley's "abusive language and attitudes [] created a hostile work environment."[24]   After filing her GFTP, plaintiff received a letter advising her that the guaranteed fair treatment process had been suspended due to her allegations of harassment and that FedEx would be initiating an equal employment opportunity ("EEO") investigation.[25]   Plaintiff then, on December 4, 2001, filed an internal EEO complaint with FedEx alleging gender discrimination and retaliation.[26]   Plaintiff sent her GFTP/EEO complaint to Randy King, the managing director of the River District.[27]   On January 18, 2002, King issued his investigative report which found LeJeune's complaint

---

[23] Rec. Doc. No. 33, SOMF ¶ 32.

[24] Rec. Doc. No. 1.   Plaintiff further complained about her work environment and treatment in the workplace, stating, "The harassing work environment began as a result of the abusive language and attitudes by my co-workers, Charlie Cruthirds and Steve Alley.  I believe Charlie did not like me because I took over his position after I moved to full-time dispatcher in 1996. The performance numbers went up and I took over.  Steve is a friend of Charlie's. A conflict of personalities arose."  Rec. Doc. No. 33, SOMF, ¶ 32.

[25] *Id.* at SOMF ¶ 33.   Upon the EEO decision, the GFT procedure was reinstated in order to determine whether plaintiff's second warning would be upheld.  King upheld the letter; plaintiff appealed, fearing that she would be terminated "for something else [she] did not do" and the decision was upheld on appeal.

[26] *Id.* at SOMF ¶ 34.   In her EEO complaint, plaintiff alleged that she was treated differently because she was a woman and, therefore, a victim of gender discrimination.  Specifically, plaintiff cited "a lack of support from management in verbal harassment disputes with [her] male co-workers," and a number of discrete incidents including an allegedly harassing note about peanut oil on the refrigerator at work and an anonymous telephone death threat that occurred on December 23, 1998.  *Id.* at SOMF ¶¶ 35-50.

[27] Rec. Doc. No. 1.

uncorroborated and lacking verifiable information.[28]

Plaintiff alleges that after submitting her written complaint, FedEx's management retaliated against her by having her engage in her eight counselings between March 18, 2002, and August 7, 2002.[29] Finally, on August 27, 2002, plaintiff received her third and final warning letter which she alleges was an act of further retaliation.[30] FedEx terminated plaintiff that same day based on a pattern of disruptive conduct in the workplace pursuant to FedEx's policy of termination upon receipt of three written warnings within a twelve month period.[31]

On December 3, 2002, plaintiff filed her discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). On November 26, 2003, after receiving a right-to-sue letter from the EEOC, plaintiff filed this action.[32] On December 1, 2004, FedEx filed its motion for summary judgment, contending that it is entitled to judgment as a matter of law.[33]

---

[28] Rec. Doc. No. 55, exhibit 29. King did, however, recommend that Alley and Cruthirds receive documented counselings for inappropriate behavior, and that Maykut should also be counseled. *Id.*

[29] Rec. Doc. No. 1, ¶ 19.

[30] Rec. Doc. No. 33, SOMF ¶¶ 67-71. *See* Rec. Doc. No. 1, ¶ 20.

[31] Rec. Doc. No. 33, SOMF ¶ 72.

[32] Rec. Doc. No. 1.

[33] Rec. Doc. No. 33. FedEx's contends, in addition to raising a number of related arguments, that: 1) the hostile work environment of which plaintiff complains was sex-neutral in character; 2) the company has an established written policy against sexual harassment in the workplace and a reporting policy which plaintiff unreasonably failed to utilize; and 3) plaintiff cannot establish a causal nexus between her complaints of discrimination and her termination.

### *Law and Analysis*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c).  Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  That burden is not satisfied by creating merely some metaphysical doubt as to the material facts, by conclusory allegations, unsubstantiated assertions or by only a scintilla of evidence.  *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  The materiality of facts is determined by "the substantive law's identification of which facts are critical and which facts are irrelevant."  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  Therefore, a fact is material if it "might affect the outcome of the suit under the governing law."  *Id.*  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

-9-

party." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356 (internal quotation omitted).

In order to demonstrate that summary judgment should not lie, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Auguster v. Vermilion Parish School Board,* 249 F.3d 400, 402 (5th Cir. 2001). A court will resolve factual controversies in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. The mere existence of a scintilla of evidence on the non-moving party's position is insufficient to defeat a properly supported motion for summary judgment, and the non-movant may not rely on mere allegations and denials. *Liberty Lobby Inc.*, 477 U.S. at 252, 106 S. Ct. at 2512. The non-moving party must present evidence upon which a reasonable jury could reasonably find for the non-mover. *Id.* The Court will not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *See id.* (citing *Lujan v. Nat'l*

-10-

*Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990)).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909 (5th Cir. 1992)).

Moreover, this Court must enter summary judgment for a party when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. at 2552.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552; *Munoz v. Orr*, 200 F.3d 291, 307 (5th Cir. 2000) ("A complete failure of proof as to one element requires summary judgment against the entirety of the claim.") (citation omitted).

## I. Sex Discrimination

Plaintiff's complaint contains two discrete discrimination claims based on her sex:  1) a disparate treatment/denial of training opportunities claim and 2) a hostile work environment

claim.  The Court addresses each in turn.

**A.    Disparate Treatment/Denial of Training Opportunities**

Title VII makes it unlawful for an employer to discharge an employee because of her sex.[34]  *See* 42 U.S.C. § 2000e-2(a).  In order to defeat summary judgment with respect to her sex discrimination claim, plaintiff must satisfy the *McDonnell Douglas* burden-shifting test.[35]  *See McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  First, plaintiff must establish a prima facie case of discrimination by

_____

[34] The Court does not analyze LeJeune's Louisiana employment discrimination law, La. R.S. 23:301-303, claims separately because generally such claims are coextensive with and analyzed under Title VII precedent.  *See Lash v. Ethicon-Endo Surgery*, No. Civ. A. 03-244, 2004 WL 1043146, at *2 n.2 (E.D. La. May 6, 2004) ("Because Louisiana's anti-discrimination law is substantively similar to Title VII, interpretations of the federal statute are applicable to the parallel state laws"); *Boudreux v. La. Casino Cruise, Inc.*, 762 So. 2d 1200, (La. App. 1st Cir. 2000) ("Louisiana [state] courts routinely look to the federal statute [Title VII] for guidance in determining whether a claim for sexual harassment has been asserted").

[35] This Court employs the *McDonnell Douglas* burden-shifting standard because, notwithstanding plaintiff's assertion that a modified approach should be used, this case is clearly before the Court as a pretext case.  Other than plaintiff's invocation of *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003), nothing about plaintiff's case suggests that the Court should proceed under a mixed-motive analysis.
  In *Roberson v. Alltel Information Services*, the Fifth Circuit explained that "Courts traditionally employ two frameworks for analyzing discrimination claims: 'mixed-motive' and 'single-motive' or 'pretext.'  *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)(mixed-motive); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)(pretext).  *Roberson v. Alltel Information Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).  In a mixed-motive case, a plaintiff "need only show that the protected characteristic was a 'motivating factor for any employment practice, even though other factors also motivated the practice.'  *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005)(quoting 42 U.S.C. § 2000e-2(m)).
  Because *Desert Palace* had no effect on pretext cases, the Court applies the *McDonnell Douglas* scheme.  *See Keelan*, 407 F.3d at 340-41 (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 & n.3, 124 S. Ct. 513, 157 L. Ed. 2d 357 (2003)(noting, in a case post-*Desert Palace,* the consistent use of the "familiar" *McDonnell Douglas* burden-shifting approach for disparate treatment cases)).

showing that she 1) is a member of a protected class; 2) was qualified for her position at the time of discharge; 3) was subjected to an adverse employment action; and 4) that she was replaced by someone outside the protected class or, in the case of disparate treatment, that other similarly situated persons were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *see Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000); *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005). After plaintiff establishes a prima facie case, defendant must come forward with a legitimate non-discriminatory reason for its decision and if it does so, any presumption of discrimination created by plaintiff's prima facie case vanishes. *Septimus*, 399 F.3d at 609. Plaintiff must then demonstrate by competent summary judgment evidence that a genuine issue of material fact exists as to "whether the legitimate reasons proffered by the defendant are not its true reasons, but instead are a pretext for discrimination." *Id.*

Plaintiff's prima facie burden is quite low and one of only production rather than persuasion. *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 966-67 (5th Cir. 1999) (noting that only a minimal showing is necessary). LeJeune has undisputably satisfied the first and third prongs of her prima facie case, i.e., she is a

member of a protected class and she was terminated thereby suffering an adverse employment action.  FedEx also does not appear to contest the fact that plaintiff was replaced by a person who is not a member of the protected class.[36]  However, FedEx argues that plaintiff was not qualified for her position because she was not performing her job in a satisfactory manner.

Plaintiff contends that notwithstanding the disciplinary warning letters and non-disciplinary counselings addressing plaintiff's ongoing conduct and performance issues, she was qualified for her position.  In support of her position, plaintiff produces evidence that she received some accolades during her nineteen years of service with the company.[37]  While plaintiff's performance during the last year of her employment has been cast into doubt, the Court cannot find that plaintiff has failed to carry her prima facie burden with respect to the second prong.

With respect to the fourth prong of plaintiff's prima facie case, plaintiff's disparate treatment contentions involve her allegations that men did the same or similar things without reprimand and that she was denied training opportunities.  In

---

[36] *See* Rec. Doc. No. 33, p. 16.  FedEx concedes that plaintiff was replaced by Dwayne Braud.   Neither party addresses disparate treatment as part of plaintiff's prima facie case.

[37] Rec. Doc. No. 55, ex. A, p. 211-12.  LeJeuene received the "Bravo Zulu award" for improving certain statistics shortly after being promoted to full-time dispatcher.

order to demonstrate that a similarly situated employee outside of plaintiff's protected class was treated more favorably, a plaintiff must show that the asserted misconduct was "nearly identical." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001); *see Okoye*, 245 F.3d at 514 ("to establish disparate treatment a plaintiff must show that the employer gave preferential treatment to [ ] [another] employee under nearly identical circumstances; that is, that the misconduct for which [the plaintiff] was discharged was nearly identical to that engaged by . . . [other] employee[s]")(alterations in original)(quotations omitted).  Plaintiff has failed to establish that she was disparately treated.

Maykut, plaintiff's manager, indicated that she neither observed comparable behavior on the part of any of plaintiff's co-workers, nor had any such behavior or conduct been reported to her.[38]  Other than conjecture and accusation, plaintiff has failed to identify any summary judgment evidence that she was treated differently than her male co-workers under "nearly identical" circumstances.  Furthermore, there is no evidence that male employees did not receive written warnings for nearly identical behavior.

With respect to plaintiff's allegation that she was denied

_____

[38] Maykut specifically testified that she did not treat plaintiff differently than any of plaintiff's co-workers when she disciplined plaintiff. Rec. Doc. No. 33, ex. D, Maykut's declaration, ¶¶ 18-20.

training opportunities, LeJeune identifies one incident where she missed a training session.  Plaintiff acknowledges that she missed the session because she had been suspended; she also recognizes that she made up the training session upon her return from leave.[39]  LeJeune's conclusory allegations that the company intended to discriminate by denying her training opportunities do not satisfy her burden under *McDonnell Douglas*.  Moreover, she fails to identify any evidence that such denial was causally related to her sex as opposed to being a function of her absence from work.  In light of the foregoing, the Court finds that LeJeune has failed to carry her burden of establishing a prima facie disparate treatment claim.

Alternatively, even if LeJeune had established a prima facie case of discrimination on the basis of her sex, the Court concludes that she has failed to provide sufficient evidence both that the legitimate, nondiscriminatory reasons provided by FedEx for her termination were a pretext for discrimination and that discrimination was the real reason for her termination.  Under the second step of the *McDonnell Douglas* framework, FedEx has proffered a legitimate, nondiscriminatory reason for plaintiff's termination.  The Fifth Circuit has explained that once

> the employer meets its production burden, the presumption
> of discrimination created by the plaintiff's *prima facie*

---

[39] Rec. Doc. No. 33, SOMF ¶ 40; Rec. Doc. No. 55, ex. D, declaration of LeJeune.

case falls away and the factual inquiry becomes more
specific.  To avoid dismissal on the employer's motion
for summary judgment, the employee must show that the
employer's putative legitimate, nondiscriminatory reason
was not its real reason, but was merely a pretext for
discrimination.  In other words, after a defendant
employer has met its burden of production, an employee
plaintiff, like any other civil plaintiff, must now
demonstrate that there is a material issue of disputed
fact as to discrimination, the ultimate question *vel non.*
In some instances, proof of pretext alone will suffice.

*Patrick v. Ridge*, 394 F.3d 311, 315-16 (5th Cir. 2004) (citation

footnotes omitted).

Plaintiff bears the burden of producing evidence that

FedEx's justification was pretextual.  *See Rutherford v. Harris*

*County, Texas*, 197 F.3d 173, 180 (5th Cir. 1999).  Plaintiff

contends that there are material issues of fact relating to

whether the reasons given by the company for terminating her were

the real reasons or merely pretextual.  Although plaintiff argues

pretext, plaintiff merely challenges the underlying facts of the

warning letters issued to her.  For example, plaintiff argues

that (1) contrary to the statement of Eugene Shannon, she did not

speed out of the parking lot,[40] and (2) her speaking to the

courier in a loud tone was the result of the poor quality of the

courier's radio and not due to any disruptive or abusive

intent.[41]  However, a challenge to the merits of a company's

disciplinary decisions does not necessarily support an inference

---

[40] Rec. Doc. No. 55, p. 12.

[41] *Id.* at p. 14.

of pretext.  *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999); *Wilson v. Belmont Homes, Inc.*, 970 F.2d 53, 57 (5th Cir. 1992) ("Title VII, by its own terms, does not require that an employer terminate its employees only for good cause; our inquiry is not into the merits of the employer's employment decisions but into the motives.").

Considering the record evidence in its totality and in a light most favorable to plaintiff, the Court finds that plaintiff has failed to create a genuine issue of material fact as to whether FedEx's proffered explanation for her termination was false or pretextual.  The evidence before the Court amply supports the justification given by the company for LeJeune's termination.

Pursuant to published company policy, plaintiff received three written warnings within a ten month period which lead to her termination.  FedEx documented plaintiff's pattern of unprofessional and disruptive behavior as well as plaintiff's failure to follow company policies.  Moreover, after she received her second warning letter, FedEx gave plaintiff a number of opportunities through non-disciplinary counselings with management that did not rise to the level of a written disciplinary warning.  Plaintiff received eight such counselings before receiving her third and final written warning.

Finally, even if plaintiff had produced some evidence of

-18-

pretext, FedEx would nevertheless be entitled to summary judgment because plaintiff's case does not support an inference that discrimination based upon plaintiff's sex was the real reason for the company's employment decision.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105 (2000) ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.  For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."); *Chabert v. Nat'l Marine, Inc.*, No.Civ.A. 98-3120, 1999 WL 1102491 (E.D. La. Dec. 3, 1999) (granting employer's motion for summary judgment).

*Reeves* provides that summary judgment may be appropriate depending on numerous factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered."  *Reeves*, 530 U.S. at 148-49, 120 S. Ct. at 2109.

-19-

Given the relatively weak facts supporting any finding of pretext, the Court finds that no rational factfinder could conclude that plaintiff's termination was motivated by the fact that she is female or that FedEx intentionally discriminated against plaintiff based on her sex.

**B.  Hostile Work Environment**

In order to establish a prima facie sex discrimination claim based on a co-worker created hostile work environment:

> [t]he plaintiff [] must establish that 1) she belongs to a protected class; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action. Conduct sufficient to create a hostile working environment must be severe or pervasive.  To be actionable, the alleged harassment must have created an environment that a reasonable person would find hostile or abusive.  Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.

*Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005) (citation footnotes omitted) (citing *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir. 2002); *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298-99 (5th Cir.2001); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); and *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).